# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**SHEARMAN WISHAM (#150057)**                                    **CIVIL ACTION**

**VERSUS**

**DARREL VANNOY, ET AL.**                                    **NO. 18-172-JWD-RLB**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on October 15, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

SHEARMAN WISHAM (#150057)                              CIVIL ACTION

VERSUS

DARREL VANNOY, ET AL.                                 NO. 18-172-JWD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The petitioner, Shearman Wisham, challenges his conviction, entered in 2014 in the Eighteenth Judicial District Court for the Parish of West Baton Rouge, State of Louisiana, on one count of principal to second degree murder.  The petitioner contends that (1) the evidence was insufficient to support his conviction, (2) prosecution of his criminal proceeding was time-barred, (3) the trial court erred in allowing the admission of other crime evidence, and (4) he was provided with ineffective assistance of counsel by his trial and appellate counsel.

## Factual Background

The facts, as accurately summarized in the decision of the Louisiana First Circuit Court of Appeal (*State v. Wisham,* 14-1394 (La. App. 1 Cir. 7/29/15), 2014 WL 4556989), are as follows:  A recording of the victim's sworn testimony was presented at trial.  In that statement, the victim, Odis Roberts, testified that on October 11, 2010, around 11:30 p.m., Mary Douglas[1], the victim's live-in girlfriend, woke him up and asked him to take the petitioner to his sister's house "across the river" in Port Allen.  The victim testified that he believed the petitioner had been at his house since "first dark."  The victim obliged, and the petitioner directed the victim to

---

[1] Douglas, who had once been married to the petitioner, was also convicted of principal to second degree murder.

the alleged house.  Upon their arrival, the victim told the petitioner that he did not believe anyone was home.  The petitioner exited the victim's SUV, entered the house, returned, and informed the victim that the occupants must have "gone to the store, but [that] they would be back after a while."  The victim stated that the petitioner then re-entered the vehicle but exited again because he needed to urinate. When the petitioner did this, the victim testified "that's when he shot me three times."

The victim stated the petitioner was standing outside of the SUV and was shooting through the front passenger door and glass.  After the first shot, the victim had mistakenly believed that someone else was shooting at both of them and tried to get the petitioner to enter the SUV.  The petitioner would not enter, and at that point, the victim testified he realized the petitioner shot him.  The petitioner then shot him two more times.  The victim died eleven months later.

Sergeant Kirby Thibodeaux, Jr. of the West Baton Rouge Parish Sheriff's Office testified that at approximately 12:17 a.m., on October 12, 2010, he and several other deputies were dispatched to North River Road in connection with a reported shooting.  Upon their arrival to an "abandoned" and "dilapidated" house, Sergeant Thibodeaux observed a Honda Passport SUV parked in the driveway, with the headlights on, all four doors locked, and the victim "slumped over the steering wheel."  Sergeant Thibodeaux instructed another deputy to unlock the driver's door, and when he did, a black, nylon handgun case fell onto the ground, though a handgun was not located inside of the case.  Further, Sergeant Thibodeaux noted that, although the victim had a slight pulse, he was "unresponsive" and "pretty much lifeless."  Sergeant Thibodeaux testified that the front passenger window was shattered, "as it appeared that somebody had shot or ... something went through it," with most of the glass on the front passenger seat.  Furthermore,

blood was visible on the front passenger seat, floorboard, and center console.  After walking the crime scene perimeter, Sergeant Thibodeaux did not find any shell casings on the ground.

 Louisiana State Trooper Benny Taylor testified that during the early morning hours on the day of the shooting, he heard West Baton Rouge Parish deputies being dispatched in reference to a possible shooting.  Trooper Taylor proceeded to drive to the scene in an effort to assist, but along the way, received word of a black male walking eastbound in the westbound lane of the U.S. Highway 190 bridge.  Trooper Taylor advised Sergeant Thibodeaux that he would investigate the pedestrian, who was later identified as the petitioner.

The petitioner was at the bottom of the bridge on the East Baton Rouge side when Trooper Taylor first encountered him at approximately 1:30 a.m.  Trooper Taylor stopped his vehicle, approached the petitioner, asked him about his destination, and the petitioner responded that he was walking to his house.  Trooper Taylor offered the petitioner a ride back to his house, but advised that he had to first perform a weapons frisk.  As Trooper Taylor began to frisk the petitioner, the petitioner advised that he found a gun at the base of the bridge on the West Baton Rouge side, and that it was stuffed in his waistband.  The petitioner presented the gun, a seven-shot .357 caliber Smith & Wesson stainless steel revolver, to Trooper Taylor, who testified the gun contained three empty casings and four loaded rounds.  Trooper Taylor testified that on the night of the shooting it was raining, and when he encountered the petitioner, his clothing was wet, but the gun was not.  After being presented with the revolver, Trooper Taylor transported the petitioner to the West Baton Rouge Parish law enforcement center.

Ron Lejeune, the lead detective with the West Baton Rouge Parish Sheriff's Office, testified that during the early morning hours of October 12, 2010, he met with the petitioner, read him his *Miranda* rights, and spoke with him.  After being told by the petitioner that he found a

gun on the side of the road, Detective Lejeune traveled to the crime scene with Sergeant Thibodeaux. Detective Lejeune testified that, based on his experience, and by the way the passenger window was broken, it appeared as though "the door was probably closed, and the force, the trauma force came from the outside inward to the vehicle."

After visiting the victim at the hospital, Detective Lejeune returned to the law enforcement center, and interviewed the petitioner. Detective Lejeune noted the petitioner's clothes were wet, and that he had gloves in his pocket. After several other inconsistent statements, the petitioner informed Detective Lejeune that on the night of the shooting, the victim came to his house, picked him up, and told him that he wanted him "to go ride with him to do a drug deal." The petitioner informed Detective Lejeune that he and the victim drove across the river, and, upon their arrival at a house, the victim made a call on his cell phone. In contrast, however, Detective Lejeune searched the victim's cell phone history, and established no calls were made from the victim's cell phone during this time. The petitioner told Detective Lejeune that once he and the victim pulled into the driveway, he observed other individuals near the house. However, Detective Lejeune's investigation revealed no other sets of tire tracks. The petitioner informed Detective Lejeune that a disagreement ensued between the victim and the other unknown individuals, he "kind of walked off," and that "sometime after that he heard two shots." Detective Lejeune testified that the petitioner told him that after hearing the gunshots, he observed the other individuals enter their vehicle and leave the scene, and he "ran to Odis's car and saw Odis shot and the gun laying on the ground. He said he saw Odis was slumped over. He left and went to the casino for a few hours."

Later, after the petitioner denied shooting the revolver, and after Detective Lejeune asked if he could conduct a gunpowder residue test on his hands, the petitioner changed his statement.

The petitioner then claimed that "he forgot to tell [Detective Lejeune] when he ran from the field to Odis's car he saw the gun laying there when they were driving off.  So, he picked the gun up and made a shot at the people when they drove away."

Upon completing his interview with the petitioner, Detective Lejeune returned to the crime scene with fellow officers to "make sure we didn't miss anything," whereby he found an empty casing with mud inside of it.  He testified the casing "was underneath the car where the car would have been parked, and the casing was full of mud and pea gravel and tarnished.  We [felt] like it had been there long before."

Two stipulations were entered into during trial.  First, that forensic scientist Charles Watson would be called by the State, and would testify that the bullet remaining in the victim's spine was not removed, and therefore was not tested; that the bullet taken from the vehicle's door could be matched as being fired from the Model 619, seven-shot .357 Smith and Wesson revolver recovered from the petitioner, but that the remaining bullet fragments obtained from the vehicle could not create a positive identification, although they bear the same class characteristics as being fired from the revolver.  Second, that forensic DNA scientist Philip Simmers would testify that all of the blood swabbed from the vehicle matched only the victim, and DNA found on the revolver did not create a match to the petitioner or the victim.

Two witnesses were called on behalf of the defense.  First, East Baton Rouge Parish Sheriff's Deputy Jimmy Douglas testified that he was the co-defendant's brother, and that he was familiar with the victim prior to the shooting.  Deputy Douglas testified that on the night the victim was shot, he was working at Earl K. Long Hospital, and he went to visit the victim in his room.  Deputy Douglas testified that the victim recognized him, and told him there "was a lot of shooting.  It was a lot of shooting, Shearman is dead.  Shearman didn't shoot me."  Deputy

Douglas also testified that the victim said "it went bad," but never said what "it" meant.  After this initial visit, Deputy Douglas did not visit nor have the opportunity to speak with the victim again.

Lastly, Sadie Roberts, the victim's sister, was recalled on behalf of the defense.  Roberts testified that the victim "lived two lives," and that he used marijuana, despite the blood analysis from the night of the shooting indicating the victim tested negative for marijuana use and testimony from other witnesses that they never knew the victim to use drugs.

**Procedural History**

After a trial by jury conducted in February, 2014, the petitioner was found guilty of principal to second degree murder.  The petitioner was sentenced on March 17, 2014, to life imprisonment without the benefit of probation, parole or suspension of sentence.  The petitioner thereafter appealed his conviction both *pro se* and through his attorney.

On July 29, 2015, the petitioner's conviction and sentence were affirmed by the Louisiana Court of Appeal for the First Circuit.  *See State v. Wisham,* 14-1394 (La. App. 1 Cir. 7/29/15), 2015 WL 4556989.  The petitioner's application for supervisory review in the Louisiana Supreme Court was denied on September 16, 2016.  *See State v. Wisham*, 15-1623 (La. 9/16/16), 206 So.3d 202.

On or about June 6, 2017, the petitioner filed an application for post-conviction relief in the state district court, which was dismissed by the trial court on September 8, 2017.  While the petitioner's PCR application was pending, the petitioner filed the instant petition herein on July 3, 2017.  The plaintiff sought further review which was denied by the Louisiana Court of Appeal for the First Circuit on the showing made.  *See State v. Wisham*, 17-1350 (La. App. 1 Cir. 11/30/17), 2017 WL 5952339.  The petitioner was given until January 29, 2018 to refile his writ

application but instead proceeded to seek further review in the Louisiana Supreme Court, which was denied on January 28, 2019. *See State v. Wisham*, 18-0094 (La. 1/28/19), 162 So.3d 892.

The State argues the petitioner failed to exhaust his claims prior to filing for habeas relief in this Court since the instant petition was filed while his state collateral proceedings were still pending. The State alternatively asserts that a deferential review of the state court proceedings and findings, as mandated by 28 U.S.C. § 2254(d) and (e), compels the conclusion that all of the petitioner's claims must be rejected. As discussed below, because the Court finds that the petitioner's claims to be without merit, it will address them at this time without requiring full exhaustion in accordance with 28 U.S.C. § 2254(b)(2).

## Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error

by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id. See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The State contends that, applying this standard to the petitioner's claims, there is no basis for the granting of habeas relief.

## Substantive Review

### *Claim (1): Sufficiency of the Evidence*

In Claim (1), the petitioner asserts that the evidence was insufficient to prove that he was the shooter, or otherwise involved in the shooting, and that the victim's death eleven months after the shooting was not the result of being shot. Applying the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the Louisiana First Circuit Court of Appeal concluded that there was sufficient evidence to support the conviction for second degree murder, and this Court find the state court's determination to be reasonable.

In arguing that the evidence was insufficient to prove that the petitioner was the shooter, the petitioner is generally attacking the credibility of the victim. Applying the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the Louisiana First Circuit Court of Appeal concluded that there was sufficient evidence to support the conviction. As noted by the state appellate court, the victim positively identified the petitioner as the shooter. The state court

found that the jury accepted the victim's account of events over the petitioner's claims and was free to make such credibility determinations.

Credibility determinations are squarely within the province of the trier of fact. Witness credibility is an issue for the jury, not a federal *habeas* court. Where a petitioner's insufficient evidence claim is based on the credibility of a witness, a federal *habeas* court generally will not grant relief. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *McCowin v. Scott*, No. 93–5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the *Jackson* standard for habeas relief.").

The jury was well within its role and acted quite reasonably when it credited the prosecution witnesses over those presented by the petitioner. In the instant case, the identity of the petitioner as the shooter was established through the victim's statements. *Peters v. Whitley*, 942 F.2d 937, 941–42 (5th Cir. 1991); *see also Fetterley v. Whitley*, No. 94–30310, 1994 WL 708655, at *1 n. 6 (5th Cir. Dec.6, 1994). Additionally, the petitioner was found walking away from crime scene with gloves in his pocket, and a gun belonging to the victim in his waistband. Three of the gun's cartridges were spent, and one bullet recovered from the victim's vehicle tested and identified as being fired from the victim's gun. Petitioner's changing version of events and statements inconsistent with the facts are further evidence of his culpability.

Turning to the evidence presented as to the cause of the victim's death following the shooting, the state appellate court noted the testimony of Dr. Suarez, who was qualified as an expert in the field of forensic pathology. Dr. Suarez explained that the shot to the victim's right

upper quadrant of the abdomen destroyed the victim's diaphragm and became lodged in the

spinal column which rendered the victim a paraplegic.  Due to the victim's wounds, he became

septic, developed pneumonia, renal disease, and a urinary tract infection.  These conditions

combined with the victim's age resulted in his death.  As such, Dr. Suarez opined that the

victim's death was directly related to the three gunshot wounds.  Additionally, the death

certificate notes "homicide" as the manner of death and noted "septic shock" and "gunshot

wounds" as the causes of death.  As such, the appellate court concluded, and this Court agrees,

that the evidence presented at trial established that the victim's death was a result of the gunshot

wounds.

For the reasons noted by the state court, the evidence presented in the instant case,

viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact

to find the petitioner guilty beyond a reasonable doubt.  Therefore, he cannot show that the state

court's rejection of his claim resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding.

Accordingly, this claim is without merit.

### Claim (2):  Time-Barred Prosecution

First, insofar as the foundation of the petitioner's speedy trial claim rests on the proper

interpretation and application of state law, this is an issue not within the scope of federal habeas

corpus.  A federal habeas court may grant relief when the petitioner is held in custody pursuant

to a judgment of a state court only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).  Federal courts will not

review a state court's interpretation of its own law in a federal habeas corpus proceeding.  *Cook

v. Morrill,* 783 F.2d 593 (5th Cir. 1986).

Second, the Sixth Amendment, as applied to the states through the Fourteenth Amendment, provides that for "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." *Divers v. Cain*, 698 F.3d 211, 215 (5th Cir. 2012). A state court may be deemed to have resolved a federal speedy trial claim on the merits even when it mentions "only the similar state rules and authorities." *Id.* at 216–17. Violation of the petitioner's right to a speedy trial requires dismissal of the indictment. *Goodrum v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008).

Speedy trial act claims are evaluated in federal court based on the four factors set out in *Barker v. Wingo*, 407 U.S. 514 (1972). These factors are: (1) length of the delay, (2) reason for the delay, (3) defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant. *Id.* at 530-533. None of the *Barker* factors is dispositive, and the four are instead "related factors [that] must be considered together and with such other circumstances as may be relevant." *Goodrum*, supra, 547 F.3d at 257 (quoting *Barker*, 407 U.S. at 533).

### a.  *Length of delay*

Under the first *Barker* factor, the court conducts a two-part inquiry. First, the delay must be long enough to give rise to a presumption of prejudice—generally, a delay of one year between indictment or arrest (whichever is earlier) and trial is sufficient. *Amos v. Thornton*, 646 F.3d 199, 206 (5th Cir. 2011) (citing *United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003)). Once this presumption is met, the court proceeds with the remainder of the *Barker* analysis and asks "the extent to which the delay extends beyond the bare minimum required to trigger a *Barker* analysis," which is "particularly significant to the speedy trial analysis because ... the presumption that pretrial delay has prejudiced the accused intensifies over time." *Amos*, 646 F.3d at 206 (internal quotations omitted).

In this matter, the Bill of Indictment was returned on December 5, 2011. Trial did not commence until February 18, 2014. Accordingly, there was over a two year delay between the beginning of proceedings and the trial, long enough to create a presumption of prejudice and sufficiently over that one-year minimum to weigh in the petitioner's favor.

*b. Reasons for delay*

The weight assigned to the next factor, based on the justifications for the delay, depends on the reasons offered. At one extreme, a deliberate delay to disadvantage the defense is weighted heavily against the state. At the other end of the spectrum, delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state. Between these extremes fall unexplained or negligent delays, which weigh against the state, "but not heavily." *Goodrum*, supra, 547 F.3d at 258 (quoting *Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir. 1994)).

A review of the trial court minutes reveals that this matter was initially set for trial on May 14, 2012. On February 1, 2012, at the request of counsel for the petitioner, the trial was continued to June 18, 2012. On June 6, 2012, the trial was continued to September 17, 2012 at the request of counsel for the petitioner. The trial was then continued to January 22, 2013 due to "discovery issues." For unknown reasons the trial was then continued to February 25, 2013. On February 6, 2013, the trial was continued to March 7, 2013 so that a *Prieur* hearing could be conducted with regards to the State's intent to offer evidence of other criminal offenses. On May 1, 2013, the parties appeared in court for the trial of unspecified motions, the hearing of which was continued to July 10, 2013 at the request of counsel for the petitioner because the petitioner's co-defendant was seeking a writ in the state appellate court. The trial of these same motions was again continued by a joint request to August 7, 2013 because the petitioner's co-defendant was still awaiting a decision from the state appellate court. On August 7, 2013, the

trial of the motions was again continued by a joint request for the same reason. On November 6, 2013, trial was scheduled for January 21, 2014. It is unclear why the trial did not commence until February 18, 2014.

The petitioner's own continuances and the continuances attributable to the State contributed nearly equally to the delay of the petitioner's trial. The petitioner has not shown that the State delayed the prosecution in order gain an impermissible advantage at trial. As such, this Court cannot conclude that that any delay attributable to the State was intentional, but because the State has not proferred any reasons to justify the delays the Court can neither conclude that the delays were justified. Accordingly, these delays are unexplained and/or negligent and this factor weighs against the State, albeit not heavily. *Goodrum*, 547 F.3d at 258.

### c. Defendant's assertion of his right to a speedy trial

The third factor asks whether the defendant "diligently asserted his speedy trial right." *Amos*, 646 F.3d at 207 (quoting *United States v. Parker*, 505 F.3d 323, 329 (5th Cir. 2007)). As the Fifth Circuit observed, it is the defendant's burden "to alert the government of his grievances." *Id.* (quoting *Robinson v. Whitley*, 2 F.3d 562, 569 (5th Cir. 1993)). Defendants must "appropriately assert their speedy trial rights, as viewed in light of their other conduct." *Laws v. Stephens*, 536 F. App'x. 409, 413 (5th Cir. 2013) (quoting *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986)). Thus, this factor may weigh against a defendant when he repeatedly moves for dismissal on speedy trial grounds but behaves in a way that undermines his professed desire for a speedy trial. *Id.*; *see also United States v. Frye*, 489 F.3d 201, 212 (5th Cir. 2007) ("A motion for dismissal is not evidence that the defendant wants to be tried promptly.") This factor hinges on the "frequency and forcefulness" of the defendant's invocation of his right to a speedy trial. *Goodrum*, 547 F.3d at 249.

Inconsistent/insufficient assertion of the speedy trial right may be found where a defendant fails to object to the state's requests for continuances. *See Laws*, 536 F. App'x. at 413. In the instant matter, there is no indication that the petitioner objected to any delay in the commencement of his trial until after his trial was concluded. Accordingly, this factor weighs against the petitioner.

### d. Actual prejudice

Under the final factor, the petitioner must show that he suffered actual prejudice. To this end, the court looks to three interests that the speedy trial right was designed to protect: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the possibility that the defense will be impaired. *Laws*, 536 F. App'x. at 414 (citing *Barker*, 407 U.S. at 532). "The most serious concern is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

The plaintiff alleged in a conclusory manner in his appeal and application for post-conviction relief that prejudice resulted from the dilatory proceeding which undermined the outcome of the proceeding. "In the absence of particularized trial prejudice, delay attributable to the government's negligence has typically been shockingly long to warrant a finding of prejudice." *United States v. Robinson*, 455 F.3d 602, 608 (6th Cir. 2006) (quotations omitted); *see, e.g.*, *Doggett v. United States*, 504 U.S. 647, 657-658 (1992) (six years); *United States v. Brown*, 169 F.3d 344, 351 (6th Cir. 1999) (five and a half years); *cf. Serna-Villareal*, *supra*, 352 F.3d at 231 (no actual prejudice shown, based on three year and nine month delay). This factor thus weighs against the petitioner and his 26-month delay from indictment to trial.

*e. Balancing the factors*

As noted above, the first factor weighs in the petitioner's favor because he has shown delay beyond the one-year minimum to create a presumption of prejudice.  The second factor weighs only slightly in his favor because continuances were attributable nearly equally to the petitioner and the State, and the petitioner presented no evidence that the State intentionally delayed the trial for an improper purpose.

The third factor, assertion of the speedy trial right, weighs heavily against the petitioner. He did not object to any delay until after his trial was concluded.  Additionally, he fails to show any actual prejudice based on the delay, particularly as it concerns his ability to present a defense. The balance of factors thus weighs against a denial of the petitioner's speedy trial rights. He is therefore not entitled to habeas relief on this claim.

### Claim (3):  Admission of Other Crimes Evidence

The petitioner next argues that the trial court erred in admitting evidence of other crimes that were not similar, too remote in time, and of no probative value.  A federal court does "not sit as [ a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley,* 16 F.3d 64, 67 (5th Cir. 1994).  Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.  *Estelle v. McGuire,* 502 U.S 62, 67–68 (1991); *Gonzales v. Thaler,* 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins,* 980 F.2d 292, 298 (5th Cir. 1992).

States are free to implement procedures regarding the admission and/or exclusion of evidence, provided those procedures do not infringe on a constitutional guarantee.  *Burgett v. Texas,* 389 U.S. 109, 113–14 (1967); *Pemberton v. Collins,* 991 F.2d 1218, 1223 (5th Cir. 1993).

The petitioner's claim that the trial court erred in admitting evidence of a check cashing scheme unrelated to the murder may support federal habeas corpus relief *only* if the state court's evidentiary ruling was sufficiently egregious to render the trial fundamentally unfair or to violate an explicit constitutional right. *Peters v. Whitley,* 942 F.2d 937 (5th Cir. 1991); *Edwards v. Butler,* 882 F.2d 160, 164 (5th Cir. 1989). The challenged evidence must be "a crucial, critical, or highly significant factor in the context of the entire trial." *Thomas v. Lynaugh,* 812 F.2d 225, 230 (5th Cir. 1987); *accord Gonzales v. Thaler,* 643 F.3d at 430; *Wood v. Quarterman,* 503 F.3d 408, 414 (5th Cir. 2007).

In the instant matter, the petitioner was charged with one count of principle to the second degree murder of Odis Roberts. The State introduced evidence regarding the negotiation of fraudulent checks by the petitioner and his co-defendant. The state appellate court concluded that the trial court erred in admitting this evidence because it was not independently relevant and did not satisfy any of the criteria for admissibility under state law, but that the error was harmless.

This Court finds no error in the state court's determination. The challenged evidence was neither crucial, critical, or a highly significant factor in the context of the petitioner's trial. While evidence of the fraudulent checks may have prejudiced the petitioner's defense by creating adverse inferences about his character, within the context of the entire trial its admission was harmless considering the substantial evidence of the petitioner's guilt. Any prejudicial effect of the other crimes evidence was not a substantial or crucial factor in the determination of the petitioner's guilt of charges of principal to second degree murder. As such, this claim is without merit.

*Claim (4):  Ineffective Assistance of Counsel*

Finally, with regards to the petitioner's claims of ineffective assistance of counsel, a habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel.  *Id*.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.  *See,* e.g.*, Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986).  The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy.  *See,* e.g., *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).  This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial.  *Martin v. McCotter*, *supra*, 796 F.2d at 817.  Great deference is given to counsel's exercise of professional judgment.  *Bridge v. Lynaugh*, *supra*, 838 F.2d at 773; *Martin v. McCotter*, *supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors.  *Earvin v. Lynaugh*,

860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington*, *supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter*, *supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id*. at 816-17. Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The above showing is one that the petitioner cannot make in the instant case. The petitioner alleges that his trial counsel was ineffective for failing to present a defense. A review of the record reveals that the petitioner's trial counsel presented two defenses. The first defense was that the victim was shot during a drug deal, by an unknown person, and that law enforcement officers failed to adequately investigate this theory of the case and generally engaged in substandard police work. The second defense was that the victim did not die as a result of his gunshot wounds. The petitioner's trial counsel elicited testimony regarding intervening medical conditions, the possibility of inadequate medical care due to the victim residing in eight different facilities in 11 months, and the lack of an autopsy. It is unclear what other defense could have been presented. As such, the petitioner has shown neither deficient performance nor prejudice with regards to this claim.

With regards to his appellate counsel, the petitioner alleges that his counsel failed to raise any plausible error for substantive appellate review. The petitioner has not identified any specific errors his counsel failed to raise, but the Court assumes the petitioner is asserting that his counsel was ineffective for failing to raise the additional errors the petitioner asserted in his pro se brief regarding the delay in his prosecution, admission of other crimes evidence, and ineffective assistance of trial counsel. This Court has already found these claims to be without merit. As such, it cannot be said that the performance of the petitioner's appellate counsel was deficient for failing to raise these issues as errors on appeal. Accordingly, this claim is without merit.

## Certificate of Appealability

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the

Court finds that reasonable jurists would not debate the denial of defendant's application or the correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## **RECOMMENDATION**

It is recommended that the petitioner's application for habeas corpus relief be denied, and that this proceeding be dismissed with prejudice. It is further recommended that in the event the petitioner pursues an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on October 15, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**